### OWEN v. MATTHEWS et al.

#### (*City Court of New York, General Term.* July 1, 1892.)

1. SALE—FAILURE TO ACCEPT GOODS SOLD—EVIDENCE.

   The G. Co. manufactured rubber goods, "firsts" and "seconds" in quality. Defendants agreed to take all the "seconds" manufactured in one year, at 20 per cent. less than the fixed selling price of the company, the company agreeing to maintain the catalogue price. *Held*, in an action by the company's assignee for failure to take the "seconds," that the fact that the company reduced the catalogue prices of "firsts" was no defense, since defendants had the right to take "seconds" at 20 per cent. less than the reduced price of "firsts," and in that way meet the manufacturer's cut on "firsts."

2. SAME—HEARSAY EVIDENCE.

   Declarations of defendants' customer that he could buy "firsts" at the price for which defendants offered "seconds" was mere hearsay evidence, and insufficient to establish the fact that the G. Co. were selling "firsts" below the agreed price.

3. DAMAGES—PRACTICE—RULE AT CIRCUIT.

   The measure of plaintiff's damages is to be determined by the facts appearing in evidence, and not those alleged in the pleadings as in case of a demurrer; such facts being, however, within the scope of the pleadings.

Appeal from trial term.

Action by John B. Owen against Owen Matthews and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before McGOWN and VAN WYCK, JJ.

*Wm. J. Kelly,* for appellants.     *Wales F. Severance,* for respondent.

VAN WYCK, J.   The plaintiff, by assignment from the Goodyear Vulcanite Company, alleges sale to defendants between June 11 and 27, 1891, of goods at agreed prices of $1,398.94, upon account of which payment of $986.68 has been made, and claims the balance of $412.26. The answer admits such payment, and that the goods were so sold, but denies that the agreed price or

value was as claimed; and alleges, by way of counterclaim, that on May 1, 1891, an agreement was made by them and the Goodyear Company by which it was to sell, and they were to take, all of the material manufactured by it for one year, and known as "seconds," at agreed prices of 20 per cent. less than its prices for "firsts," as fixed by published catalogue prices and the regular discounts allowed therefrom. These firsts are goods that are entirely perfect in every respect, and the seconds are imperfect or have a blemish of some kind. The answer further alleges that, at the same time it was agreed between the parties that the Goodyear Company should maintain, for one year, the prices of these firsts as specified in its catalogue, less the said trade discounts, but that in violation of this agreement it sold the firsts, between May 1 and June 30, 1891, at prices much lower than as agreed as aforesaid, and that by reason thereof defendants were unable to sell and dispose of the seconds, and hence were damaged thereby in the sum of $2,500. Upon the trial plaintiff proved the sale, the payment, and the balance of $412.26 as due, and then rested. It was conceded that the prices to be paid by defendants for seconds were to be 20 per cent. less than the net prices of the firsts. The defendants gave evidence to show that the agreement to maintain the prices of firsts for one year was made. The only evidence to show that the company had sold firsts for less than fixed prices was that it sold three invoices of firsts, one May 7th, of five gross of fine combs, known as "No. 315," at $4.50, $22.50; another July 11th, of thirty gross of fine combs, known as "No. 315," at $4.50, $135; and another June 8th, of twelve gross of dressing combs, known as "No. 2,374," at $8.35, $100.20,—the aggregate of these three invoices being $257.70. Although denying that these goods were firsts, it was conceded by plaintiff that the net prices of goods as so numbered on the catalogue were $5 per gross for No. 315, and $12.20 for No. 2,374. Now, if these two kinds of goods were firsts, and so sold, then, as defendants were to pay 20 per cent. less for seconds, they could be charged only $4.05 per gross for No. 315, seconds, and $6.68 per gross for No. 2,374, seconds. It was admitted in the case, at folio 205, that there are 100 different kinds of firsts catalogued, and at different prices. The defendants testify, at folio 145, that they bought from the company $3,600 worth of these rubber goods altogether; but they have failed to prove clearly what portion of these goods so bought are of the two kinds known as Nos. "315" and "2,374," which they should have done in order to allow the jury to ascertain how much they had been overcharged for these two kinds; for their proof, assuming its truth, is that they should have been charged $4.05 instead of $4.50 per gross for seconds of No. 315, and $6.68 instead of $10.50 for seconds of No. 2,374. It is true that at folio 175 one of the defendants, in answer to a question as to whether they have the same kind of goods mentioned in this invoice, (what invoice it is does not clearly appear,) says: "I think so. Here is one of 24 gross." But it does not appear whether these 24 gross were of the No. 315 or the No. 2,374 kind, and he continues testifying indefinitely as to goods at $64, $23 74, and $18 per gross, but, as already stated, they paid $4.50 for seconds of No. 315, and $10.50 for seconds of No. 2,374, and say that firsts of these numbers should have been sold by the company for $5 and $12.20, instead of for $4.50 and $8.35, respectively; and he continues at folio 178, in answer to this question: "Are there any numbers in your invoices of the Goodyear Vulcanite Company, that is, of the number 2,374? *Answer.* We have some of these numbers,—four gross. That is all I have discovered. They cost me $10.50. They were in the other bills $8.35; that is, for the first quality. That is all I discover." This is all of the testimony from which must be ascertained what, if any, overcharge has been made or paid by defendants. The jury would be justified in finding that there had been an overcharge of $3.82 per gross on four gross of seconds of No. 2,374, equal to $15.28, and the jury might be justified in finding an overcharge of 45 cents per gross on twenty-

four gross of seconds of No. 315, equal to $10.80. The defendants may have had much information as to overcharges, but their proof was small in result. The defendants claimed that they had on hand about $2,400 worth of rubber goods, which they were unable to sell by reason of the cut in prices of the firsts, as already shown, by the company, in violation of its agreement to maintain the same for one year. As to this, one of the defendants says, at folios 145 and 146, that he bought, altogether, about $3,600 worth of rubber goods of seconds; that he knows their sale was interfered with by reason of this cutting of prices, because "he tried to sell several numbers of those goods in June and July, 1891, and the parties to whom he offered them said, 'I won't buy "seconds," because I can buy "firsts" for the price you want for the "seconds," and I couldn't make any sale of them;'" and the other defendant, at folio 200, says that he has endeavored to sell the rubber goods which they bought of the Goodyear Company, and now have in stock, but has not been able to do so, for the reason that they had undertaken to sell the second quality for the same price the first quality had been selling for. This is the evidence on this branch of the case, and no proof is made that any of the rubber goods which defendants had on hand, and failed to sell, were of the kinds known and catalogued as Nos. 315 and 2,374. Moreover, defendants say they then knew that the company had sold these two numbers in firsts for less than the fixed price, and that they had the right to buy seconds for 20 per cent. less than the net selling price of firsts as so fixed. If they had this right to buy at prices so diminished, it certainly carried the privilege to reduce their selling price of seconds by 20 per cent., without in any way diminishing their profits, so as to meet any cut in the prices of firsts. And when their alleged customer, to whom they offered to sell the goods, said that he could buy firsts for the price that they offered seconds, if they had replied that they would then reduce their selling price by 20 per cent., it is reasonable to suppose that this offer would have been accepted. And, moreover, whether such customer so said he could buy firsts at prices at which he was offered seconds is the merest hearsay evidence, and as he had the whole world as a buying market, so far as the evidence shows, how can his declaration, if made, even if true, have any legal bearing on the measure of damages as between the defendants and the Goodyear Company? for no proof is in the case that it had reduced the prices for firsts, except, perhaps, as to three small invoices of 2 out of 100 different kinds. And so it can be safely said that defendants have not made their proof sufficiently definite, as regards their inability to sell seconds by reason of the reduction of firsts by the Goodyear Company, to enable either judge or jury to say that the reason why they have not sold part of their seconds which they bought from the Goodyear Company is because that company sold these three invoices of those two kinds of firsts, assuming that it did, at prices lower than it had agreed to sell. It is said in appellants' brief that the question is what was the rule of damages applicable to the facts as alleged in the pleadings in the case. This might be the question upon the hearing of a demurrer to such pleading, but at circuit the question is, what is the rule of damages applicable to the facts as testified to upon the trial, having regard, however, as to whether the same are properly within the scope of the pleadings. And, applying this rule, nothing can be found in the record which would justify holding that defendants have any just cause of complaint against the verdict of a jury, which holds with them, in so far as recognizing the making and breach of the contract upon which their counterclaim was founded. And this verdict so determines, for the plaintiff proved his claim of $412.26, except, perhaps, as to the two items of $15.28 and $10.80, amounting to $26.08, which, taken from the full claim, leaves $386.18 due plaintiff. Yet the verdict is only for $360.76, indicating that the jury concluded that the agreement was made and broken as contended for by defendants, and that some evidence appeared on the trial showing small damages to defendants by

reason of the company's breach of the contract. The verdict is not against the weight of evidence, so far as the defendants are concerned.

The judgment and order appealed from are affirmed, with costs.